## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DAVID BREEZE and HEATHER FLETCHER, Individually and as Co-Independent Administrators of the Estate of GINA RENEE BREEZE, Deceased,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 3:19-CV-848-NJR** |
| **BAYCO PRODUCTS, INC. and WALMART, INC.,** | |
| **Defendants.** | |
| **BAYCO PRODUCTS, INC. and WALMART, INC.,** | |
| **Third-Party Plaintiffs,** | |
| **v.** | |
| **G&R FAMILY INVESTMENTS, LLC, an Illinois Limited Liability Company,** | |
| **Third-Party Defendant.** | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion for Summary Judgment filed by Third-Party Defendant G&R Family Investments, LLC, ("G&R"). For the reasons set forth below, the Court grants the motion.

### FACTUAL BACKGROUND

On January 5, 2018, a fire occurred in the residence of Gina Breeze at 503 S. Walnut St., Wayne City, Illinois, a property owned by G&R. Gina Breeze died as a result of injuries

sustained in the fire; subsequently, David Breeze, her husband, and Heather Fletcher, her daughter, ("Plaintiffs") brought suit against Bayco Products, Inc. ("Bayco") and Walmart Inc. ("Walmart") on August 5, 2019 (Doc. 1). In their latest amended complaint, Plaintiffs allege strict liability, negligence, consumer fraud, breach of warranty, wrongful death and survival actions arising out of the sale of a 10.5-inch Brooder Clamp Light (the "Clamp Light"), manufactured by Bayco and sold by Walmart (Doc. 87). Plaintiffs allege that Gina Breeze notified G&R that water pipes in the home had frozen and requested that G&R take action to have them unfrozen (Doc. 87 at 4). To remedy the frozen water pipes, G&R purchased the Clamp Light and a 250 watt bulb, placing them in a crawlspace under the home (Doc. 87 at 4–5). Plaintiffs further allege the Clamp Light was inherently dangerous and, as a result, caused the fire to originate in the crawlspace where it was placed (Doc. 87 at 8–9).

On February 10, 2020, defendants Walmart and Bayco filed separate but identical third-party complaints for contribution (the "Complaints") against G&R (Doc. 59 at 1; Doc. 60 at 1). Due to G&R's role as owner of the property, the Complaints allege that G&R breached a duty to provide its lessees with a reasonably safe place to live and that Walmart and Bayco are entitled to contribution from G&R as a joint tortfeasor (Doc. 59 at 3–4; Doc. 60 at 3).

G&R filed a motion for summary judgment (the "Motion") on the Complaints on March 2, 2020 (Doc. 69), arguing that its prior settlement with Plaintiffs was in good faith and barred actions for contribution under applicable Illinois law. Attached to the Motion was an affidavit by Roxie Richardson, a member of G&R, authenticating copies of Releases of All Claims Against Releasees (the "Releases"), contracts executed between the Plaintiffs and G&R agreeing to settle all claims arising from the fire that occurred at the Property on January 5, 2018 (Doc. 69 at 2; Doc. 69-1). G&R also provided a copy of its insurance policy with

American Modern Select Insurance Company, indicating a policy limit of $300,000 premises liability coverage per occurrence (Doc. 69 at 2; Doc. 69-1).

On March 25, 2020, Plaintiffs filed a response in support of the Motion, representing that they entered a good-faith settlement with G&R in signing the Releases (Doc. 79 at 1). Walmart and Bayco filed a joint response in opposition to the Motion on April 6, 2020, arguing that the settlement was not in good faith and should not bar contribution (Doc. 80).

ANALYSIS

## I.  Motion for Summary Judgment

Summary judgment is only appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (*quoting* FED. R. CIV. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A "court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence[.]" *Reid*

*v. Neighborhood Assistance Corp. of America*, 749 F.3d 581, 586 (7th Cir. 2014) (*quoting Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005)).

A.  *Applicable Law*

Under the Illinois Joint Tortfeasor Contribution Act (the "Contribution Act"), a tortfeasor may discharge "all liability for any contribution to any other tortfeasor" by settling with a claimant. 740 Ill. Comp. Stat. 100/2(d). Good faith is the only limitation on the right of a tortfeasor to settle and extinguish contribution liability under the Contribution Act. 740 Ill. Comp. Stat. 100/2(c)–(d); *Johnson v. United Airlines*, 784 N.E.2d 812, 818 (Ill. 2003). Under the Contribution Act, "the settling parties carry the initial burden of making a preliminary showing of good faith." *Johnson*, 784 N.E.2d at 820. The parties must show, at a minimum, "the existence of a legally valid settlement agreement" to meet this burden, and a court may need further factual evidence to determine whether the settlement is fair and reasonable "in light of the policies underlying the Contribution Act." *Id.* In assessing the legal validity of a settlement agreement, the Court must look to the law of contracts, and "[a]s with any contract, there must be an offer, an acceptance, and a meeting of the minds on terms." *E.g.*, *Kim v. Alvey, Inc.*, 749 N.E.2d 368, 378 (Ill. App. 2001) (quoting *Lampe v. O'Toole*, 685 N.E.2d 423, 425 (Ill. App. 1997)).

Once a showing of good faith is made, the burden of proving the absence of good faith is on the party challenging the settlement by a preponderance of the evidence. *Johnson*, 784 N.E.2d at 820. A settlement will not be found to be in good faith if it is shown that either (1) "the settling parties engaged in wrongful conduct, collusion, or fraud," or (2) that the settlement "conflicts with the terms of the [Contribution] Act or is inconsistent with the policies underlying the Act." *Id.* at 822. The policies underlying the Contribution Act are "the

encouragement of settlements and the equitable apportionment of damages among tortfeasors." *Id.* at 821. An agreement conflicts with the underlying policies of the Contribution Act when the settling parties are able to obtain through the settlement what they otherwise could not have under the statute. *See Dubina v. Mesirow Realty Development, Inc.*, 756 N.E.2d 836, 841–42 (Ill. 2001); *see also In re Babb*, 642 N.E.2d 1195 (Ill. 1994). "Ultimately, however, whether a settlement satisfies the good-faith requirement as contemplated by the Contribution Act is a matter left to the discretion of the trial court based upon the court's consideration of the totality of the circumstances." *Id*.

## B. Discussion

Here, G&R has met its initial burden of showing good faith. First, the Releases exhibit the basic elements of a contract and thus constitute a legally valid settlement agreement. Both parties to the Releases maintain that they were entered into in good faith, and the terms on the Releases were clear, representing that in exchange for $300,000, Plaintiffs would release all claims arising out of the January 5, 2018 fire. (Docs. 69; 69-2; 79). Further, the Releases do not facially appear to violate the underlying policies of the Contribution Act—the amount of the settlement was the policy maximum for G&R's insurance coverage, and there is no indication that G&R could not have obtained this result without the settlement. Indeed, settling for the policy limit on insurance counsels in favor of a finding of good faith. *Yoder v. Ferguson*, 885 N.E.2d 1060, 1093 (Ill. App. Ct. 2008). As such, the releases meet the minimum requirements for a showing of good faith, and the burden is on Bayco and Walmart to show by a preponderance of the evidence that the Releases were made in bad faith.

Defendants Bayco and Walmart are unable to meet the preponderance threshold because there is no evidence the settling parties engaged in wrongful conduct, collusion, or

fraud, and they have not advanced any additional extrinsic evidence to indicate that the Releases conflict with the policies underlying the Contribution Act. A party that does not allege or present any evidence that the settling parties engaged in wrongful conduct, collusion, or fraud will not meet the burden of showing the settlement was not in good faith. *See Antonicelli v. Rodriguez*, 104 N.E.3d 1211, 1219 (Ill. 2018). Bayco and Walmart have not alleged the settling parties engaged in wrongful conduct, collusion, or fraud and, therefore, they have not initially rebutted the presumption of good faith.

Further, Bayco and Walmart advance no new evidence of conflict with the terms of the Contribution Act, merely arguing that the settlement is disproportionate with G&R's potential liability. The amount of settlement alone is not sufficient to show a settlement was not made in good faith. *Johnson*, 784 N.E.2d at 822 ("the disparity between the settlement amount and the *ad damnum* in the complaint is not an accurate measure of the good faith of a settlement"). Because Bayco and Walmart only allege that the $300,000 settlement amount was disproportionate to G&R's relative culpability, they have failed to raise an issue of fact as to whether or not the settlement was in good faith.

Bayco and Walmart additionally argue that the Motion is premature and that an evidentiary hearing is necessary for the Court to make such a finding, in particular raising concerns about the existence of personal knowledge supporting the affidavit of Roxie Richardson. The Court, however, is unpersuaded by this argument. First, the Releases and the insurance policy appear to be self-authenticating, and do not in fact need Richardson's accompanying affidavit to be admissible. Furthermore, to the extent that Richardson's affidavit might not be admissible, the Court sees no indication that the statements contained in it could not be presented in an admissible form at trial, and thus it may be considered for

purposes of a motion for summary judgment. In sum, it is within the discretion of the trial court to make a preliminary finding of good faith based on the totality of the circumstances, and it is not obligated to hold an evidentiary hearing. *Johnson*, 784 N.E.2d at 821, 825. Here, the size of the settlement, the circumstances surrounding its formation, and the avowed intent of the parties to the settlement are sufficient to persuade the Court that it was in good faith, and the arguments presented by the defendants are unpersuasive and do not raise a genuine issue of material fact. Accordingly, summary judgment is granted to G&R.

## Conclusion

For the reasons set forth above, the Court **GRANTS** G&R's Motion for Summary Judgment (Doc. 69). The Court will enter judgment accordingly at the conclusion of the entire action.

**IT IS SO ORDERED.**

**DATED:   June 9, 2020**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**