IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DAVID BREEZE and HEATHER FLETCHER, Individually and as Co-Independent Administrators of the Estate of GINA RENEE BREEZE, Deceased,** | |
| **Plaintiffs,** | |
| v. | Case No. 3:19-CV-00848-NJR |
| **BAYCO PRODUCTS INC. and WALMART INC., d/b/a WAL-MART STORES, INC.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court are two Motions to Dismiss for Failure to State a Claim (Docs. 85, 91) filed by Defendant Walmart Inc. ("Walmart"), and a Motion to Dismiss for Failure to State a Claim (Doc. 89) filed by Defendant Bayco Products, Inc. ("Bayco"). For the reasons set forth below, the Court denies the motions.

### FACTUAL & PROCEDURAL BACKGROUND

This action is based on an incident in which a fire broke out at the home of Gina Renee Breeze on January 5, 2018, resulting in her death. In their latest amended complaint, Plaintiffs David Breeze and Heather Fletcher, as administrators of the estate of Gina Renee Breeze ("Plaintiffs"), allege 18 counts of strict liability, negligence, consumer fraud, breach of warranty, wrongful death and survival actions arising out of the sale of a 10.5-inch Brooder Clamp Light (the "Clamp Light"), manufactured by Bayco

and sold by Walmart (Doc. 87). Plaintiffs allege that Gina Renee Breeze notified her landlord that water pipes in the home had frozen and requested that the landlord take action to have them unfrozen on December 27, 2017 (*Id.* at 4). To remedy the frozen water pipes, the landlord purchased the Clamp Light and a 250 watt bulb from Walmart on January 3, 2018, placing them in a crawlspace under the home on January 4 (*Id.* at 4–5).

Plaintiffs allege that "at all times relevant" Bayco marketed the Clamp Light as a "safe, quality product that is suitable for use in all spaces" and that Bayco marketed the Clamp Light as safe for use with bulbs up to 300 watts (*Id.* at 5). The amended complaint refers to certain specific statements which Plaintiffs allege were on Bayco's website "at all times relevant[,]" including statements to the effect that the Clamp Light gives "the light you need, wherever and whenever you need it[,]" that the Clamp Light can hold "securely to virtually any surface" and that the Clamp Light "will handle up to a 300W Med Screw Base Bulb" (*Id.* at 6).

Plaintiffs further allege that Walmart "at all times relevant" had statements on its website to the effect that the Clamp Light was "ideal to use…in your backyard…or working on projects in dim areas" and that the Clamp Light is "suitable for use on a variety of surfaces" and "with a 300-watt incandescent bulb" and that the Clamp Light could be used with a heat lamp bulb to "prevent freezing of water pipes, car radiators, and pumps" (*Id.* at 7-8).

Plaintiffs allege that both Bayco and Walmart made the statements on their websites with the intent of inducing reliance by customers, and that Walmart further

Page 2 of 14

stocked 250-watt heat lamp bulbs on retail shelves immediately next to the Clamp Light for the purpose of inducing customers to buy heat lamp bulbs with the clamp light (*Id.*).

Plaintiffs further allege the Clamp Light was inherently defective and dangerous and, as a result, caused the fire to originate in the crawlspace where it was placed (Doc. 87 at 8–9). Bayco and Walmart failed to warn consumers of the unreasonably dangerous and defective conditions of the Clamp Light, Plaintiffs allege (*Id.* at 9).

On April 23, 2020, Walmart filed a motion to dismiss for failure to state a claim (Doc. 85). On May 8, 2020, Plaintiffs filed an amended complaint (Doc. 87), and Walmart on May 22 refiled its motion to dismiss with arguments amended to address the amended complaint (Doc. 91). In Walmart's second motion to dismiss, it argues that Counts X and XI, alleging product liability claims against Walmart for the Clamp Light, should be dismissed pursuant to the statutory seller's exception in Illinois law. Walmart further argues that Counts XIV and XV, alleging claims against Walmart under the Illinois Consumer Fraud Act (ICFA), should be dismissed because Plaintiffs: (1) have not satisfied pleading requirements under Fed. R. Civ. P. 9(b), (2) are not a consumer under the ICFA and lack standing under the "consumer nexus" test, and (3) do not allege actual deceit and show proximate cause as required by the ICFA. Walmart next argues that claims XVI and XVII, alleging claims for breach of implied warranty of merchantability against Walmart, should be dismissed because Plaintiffs failed to give pre-suit notice as required by the Uniform Commercial Code ("UCC"). Lastly, Walmart argues that Counts XI and XIII, which involve claims for punitive damages against Walmart, should be dismissed as those claims do not survive the death of Gina Breeze.

In its Motion to Dismiss (Doc. 89), Bayco reiterates the arguments made by Walmart regarding the ICFA in relation to Counts V and VI, which allege ICFA claims against Bayco. Bayco further reiterates Walmart's arguments regarding the implied warranty of merchantability in relation to Counts VII and VIII which present analogous claims against Bayco. Lastly, Bayco repeats Walmart's claims regarding punitive damages in relation to Counts II and IV, which seek punitive damages against Bayco.

## LEGAL STANDARD

In addressing a motion to dismiss for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must assess whether the complaint includes "enough facts to state a claim to relief that is plausible on its face." *Khorrami v. Rolince*, 539 F.3d 782, 788 (7th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

The Court of Appeals for the Seventh Circuit has clarified that, even after *Twombly*, courts must still approach Rule 12(b)(6) motions by construing the complaint in the light most favorable to the non-moving party, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in the non-moving party's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)).

## DISCUSSION

### I. Seller's Exception to Product Liability

To establish a product liability under Illinois law, a plaintiff must demonstrate: (1) that an injury resulted from a condition in the products; (2) the condition of the product

was unreasonably dangerous; and (3) the condition existed at the time the product left the manufacturers control. *Lexington Ins. Co. v. Office Depot, Inc.*, 943 F. Supp. 2d 844, 848 (N.D. Ill. 2013). Illinois law applies strict liability to "all entities in the distributive chain of a defective product." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 745 (7th Cir. 2007) (quotations omitted). An exception to this broad imposition of strict liability is the "Seller's Exception" created by 735 Ill. Comp. Stat. 5/2-621, which provides for dismissal of product liability claims against a nonmanufacturer defendant where that defendant files an affidavit identifying the manufacturer of the product in question and the manufacturer is joined in the suit. A plaintiff may avoid dismissal pursuant to the Seller's Exception, however, where he may prove one of the following:

(1) "that the defendant exercised some significant control over the design and manufacture of the product, or has provided instructions or warnings to the manufacturer relative to the alleged defect in the product which caused the injury, death or damage;

(2) that the defendant actually knew of the product defect that caused the injury, death or damage; or

(3) that the defendant created the product defect that caused the injury, death or damage."

735 Ill. Comp. Stat. 5/2-621(c).

Here, it is undisputed that Walmart has provided an affidavit that is satisfactory for purposes of the Seller's Exception and that Bayco has been named as a defendant in this action. Accordingly, dismissal is appropriate unless Plaintiffs can demonstrate that one of the exceptions of § 621(c) applies. Here, however, Plaintiffs' amended complaint does allege that both Bayco and Walmart were aware of the defective nature of the Clamp

Light, stating that they "knew or should have known," of the defective nature of the Clamp Light.

In its response to Walmart's motion, Plaintiffs note that at certain points in their amended complaint they state that Walmart "knew or should have known" of the defective nature of the Clamp Light. *See, e.g.*, Doc. 87 at 30, ¶ 133. Walmart points to its own affidavit in support of its contention that it had no knowledge, and it may well be able ultimately prevail in this argument. This is a factual issue, however, which must be resolved at a later stage in this action. The allegations in Plaintiffs' complaint are facially sufficient to prevent dismissal pursuant to the Seller's Exception.

## II.    ICFA Claims

### A. 9(b) Pleading Standard

A complaint alleging a violation of ICFA must be pleaded with the same particularity and specificity under Rule 9(b) as that required for common law fraud. *E.g., Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 2d 720, 731 (N.D. Ill. 2005). To meet the requirements of Rule 9(b), a plaintiff may not simply characterize acts as fraudulent or deceptive, but rather must plead "the who, what, when, where and how" of the alleged deception. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). In the context of the ICFA, this means that a plaintiff must identify "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Schiffels v. Kemper Fin. Servs.*, 978 F.2d 344, 352 (7th Cir. 1992).

Here, Walmart and Bayco allege that Plaintiffs' amended complaint falls short of the specificity required by Fed. R. Civ. P. 9(b) because it does not state the date of Walmart and Bayco's alleged representations with enough precision and does not allege actual reliance on misrepresentations.

Plaintiffs have identified alleged misrepresentations, they have identified the entities making the misrepresentations, and the method by which they were communicated. Plaintiffs' statement that such misrepresentations were on Walmart's and Bayco's websites "at all times relevant" is indeed vague, and Walmart and Bayco point to other cases in which complaints have been deemed insufficient due to such broad language. Looking beyond the phrase "at all times relevant," a more fulsome examination of the complaint reveals that the time period in question is in fact rather brief and circumscribed: it is clear that Gina Breeze died on January 5, 2018, and that the Clamp Lights were purchased by her landlord after her initial complaint about frozen pipes on December 27, 2017. Accordingly, the time period "relevant" to the complaint would appear to be the period of no more than a month prior to January 5, 2018, when marketing statements by Bayco and Walmart would have been likely to influence the decision to purchase and install the Clamp Light. It seems unreasonable to expect Plaintiffs to know the exact timing of when certain statements were present on specific websites at the pleading stage, and given the relatively static nature of most commercial websites it seems likely that most such statements would not be of such a fleeting nature that their timing would need to be stated with great specificity. While Plaintiffs' complaint could be better worded, taken in full the Court views its allegations as sufficiently specific in

terms of timing. Defendants' arguments regarding failure to plead actual reliance similarly go beyond the specificity required by Rule 9(b), as actual reliance is not a necessary element of a claim under the ICFA, as discussed below.

B. *Consumer Nexus Test*

To have standing to bring a claim under the ICFA, a plaintiff must either be a consumer or satisfy the "Consumer Nexus Test," which requires a plaintiff to allege "conduct [that] involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *Roppo v. Travelers Cos.*, 100 F. Supp. 3d 636, 651 (N.D. Ill. 2015) (quoting *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 546 N.E.2d 33, 41 (Ill. App. Ct. 1989)). In order to satisfy the Consumer Nexus Test, a plaintiff must show:

> (1) that their actions were akin to a consumer's actions to establish a link between them and consumers; (2) how defendant's representations…concerned consumers other than [plaintiff]; (3) how defendant's particular [activity] involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers.

*Roppo*, 100 F. Supp. 3d at 651 (quoting *Brody v. Finch Univ. of Health Sciences/The Chicago Med. Sch.*, 698 N.E.2d 257, 268 (Ill. App. Ct. 1998).

The connection between a defendant's representations and the ultimate consumer cannot be too tenuous. For example, courts have observed that merely noting that products traded between two commercial partners will ultimately be sold to end consumers is insufficient to establish a consumer nexus, as "[a]lmost every product sold by one commercial party to another will ultimately be sold to or otherwise effect a consumer" and to permit a claim on this basis would allow the ICFA to apply to "nearly

all commercial transactions[,]" contravening the intent of the legislature. *Stepan Co. v. Winter Panel Corp.*, 948 F. Supp. 802, 807 (N.D. Ill. 1996).

Certain courts have used the phrase "natural person" in referring to plaintiffs within the scope of the Consumer Nexus Test. *E.g.*, *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp. 2d 898, 911 (N.D. Ill. 2012) (quoting *Bank One Milwaukee v. Sanchez*, 783 N.E.2d 217, 221 (Ill. Ct. App. 2003)). The text of the ICFA, however, uses a broader definition, providing that "any person" may bring an action under the ICFA and defining "person" as:

> "any natural person or his legal representative, partnership, corporation (domestic and foreign), company, trust, business entity or association, and any agent, employee, salesman, partner, officer, member, stockholder, associate, trustee or cestui que trust thereof."

815 Ill. Comp. Stat. §§ 505/1, 505/10a.

Indeed, despite the use of the phrase "natural person" in *Thrasher-Lyon*, Illinois courts have in fact rejected the notion that only natural persons may have standing through the consumer nexus test. *Bank One Milwaukee*, 783 N.E.2d at 221 (holding consumer nexus test "applies to any entity seeking to bring an action" under the ICFA, not just natural persons).

Here, Walmart and Bayco argue that Plaintiffs fail to satisfy the Consumer Nexus Test because they are not a natural person and because the connection between the allegedly misleading representations and end consumers was too conclusory and tenuous. Both of these arguments, however, misinterpret the decisions that they rely upon. First, the plain language of the ICFA clearly allows for claims by legal

representatives such as estates, not just natural persons, and Illinois courts have rejected such restrictive definitions of potential plaintiffs under the ICFA. Secondly, the representations at issue in this case were not made between individual parties to a commercial transaction as in the cases cited by Defendants but rather were placed on Defendants' websites and directed to the consumer public in general. As such, the connection between Defendants' representations and end consumers is sufficiently clear. In sum, Plaintiffs satisfy the Consumer Nexus Test for standing.

### C. Actual Deceit & Proximate Cause

Courts have found that certain provisions of the ICFA, namely Section 2, require a showing that a defendant's alleged deceptive practices directly or indirectly caused the plaintiff's injury. *Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 217 (Ill. 2004) (citing *Zekman v. Direct Am. Marketers*, 695 N.E.2d 853, 860-61 (Ill. 1998)). Actual deceit may not be necessary, however, where a plaintiff relies on a failure to warn theory, alleging that a defendant knew of a defect and concealed that knowledge from customers. *Pappas v. Pella Corp.*, 844 N.E.2d 995, 1004 (Ill. App. Ct. 2006) (distinguishing facts from *Shannon* where "plaintiffs allege they relied on [defendant's] concealment by silence."). In *IWOI, LLC v. Monaco Coach Corp.*, 581 F. Supp. 2d 994, 1004 (N.D. Ill. 2008), the Northern District of Illinois broadly interpreted *Pappas* as standing for the proposition that "manufacturers can be liable under the Illinois Consumer Fraud Act when they knowingly place a materially defective product into the stream of commerce whether or not they are in privity of contract with or communicate directly to the end consumer."

Here, Defendants argue that Plaintiffs' failure to show actual deceit and proximate cause is fatal to their complaint, but again they misinterpret the decisions upon which their arguments rely. While certain actions alleging actual deceit may require such a showing, Plaintiffs here allege that Defendants actually knew or should have known of the defects in the Clamp Light, and an argument based on a failure to warn theory does not require a showing of actual deceit. Accordingly, Plaintiffs' complaint is sufficient in this respect.

### D. Pleading Damages

To state a claim under the ICFA, plaintiffs must allege actual damages. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005). Such damages must go beyond mere intimations of psychological harm or claims of nuisance. *Morris v. Harvey Cycle and Camper, Inc.*, 911 N.E.2d 1049, 1053-54 (Ill. App. Ct. 2009). Plaintiffs, however, need not put a precise dollar value on damages. *Kirkpatrick v. Strosberg*, 894 N.E.2d 781 (Ill. App. Ct.), *appeal denied*, 900 N.E.2d 1118 (Ill. 2008).

Defendants seek to argue that the damages alleged by Plaintiffs are vague and insubstantial, comparing them to claims of emotional and psychological harms that have been deemed insufficient by courts in the past. Harm such as the death of the decedent in this action is very real and substantial, even if it may not readily correspond to a precise monetary value. Accordingly, Plaintiffs have pleaded sufficient damages.

### III. Implied Warranty of Merchantability

Under the UCC, as adopted by Illinois, a plaintiff seeking to bring an action under a theory of breach of the implied warranty of merchantability must provide the defendant

with notice of the alleged breach "within a reasonable time after [the plaintiff] discovers or should have discovered any breach" or else the plaintiff is "barred from any remedy." 810 Ill. Comp. Stat. § 5/2-607(3)(a). Courts have interpreted this provision as requiring pre-suit notice of a warranty claim. *See, e.g.*, *Connick v. Suzuki Motor Corp.*, 675 N.E.2d 584, 589 (Ill. 1996); *see also Anthony v. Country Life Mfg., LLC*, 70 F. App'x 379, 384 (7th Cir. 2003). This rule, however, is not without exceptions—most notably, if a consumer plaintiff alleges a personal injury arising from the breach, notice may be satisfied simply by filing a complaint stating a breach of warranty action against the seller. *Maldonado v. Creative Woodworking Concepts, Inc.*, 694 N.E.2d 1021, 1026 (1998) (citing *Connick*, 675 N.E.2d at 589).

Here, Defendants seek to dismiss based on Plaintiffs' lack of pre-suit notice of the alleged breach. Plaintiffs, however, are clearly pleading a personal injury arising from the alleged breach, and as discussed they are in the position of a consumer. Accordingly, they have satisfied the notice requirement with the filing of their complaint.

### IV.   Punitive Damages

The Illinois Survival Act, 755 Ill. Comp. Stat. § 5/27-6, determines which actions survive the death of the injured party. The Act itself is silent regarding punitive damages, but states broadly that "actions to recover damages for an injury to the person" shall survive. *Id.* Generally, Illinois courts have found that punitive damages do not survive the death of the injured party. *Ballweg v. Springfield*, 499 N.E.2d 1373, 1377 (Ill. 1986) (citing *Froud v. Celotex Corp.* 456 N.E.2d 131 (Ill. 1983); *Mattyasovszky v. West Towns Bus Co.*, 330 N.E.2d 509 (Ill. 1975)). The Illinois Supreme Court, however, allowed for an exception to

this rule in *Froud* and *Mattyasovszky*, noting that punitive damages might survive "where 'strong equitable considerations' existed such as the unavailability of any other remedy." *Froud*, 456 N.E.2d at 135 (quoting *Mattyasovszky*, 330 N.E.2d at 512).

Illinois courts have expanded on the factors to be examined in determining if such equitable considerations are present, stating that:

> "The factors generally considered in determining whether an action for punitive damages survives are: (1) whether under ordinary circumstances the requested punitive damages have a statutory basis or are an integral component of a regulatory scheme and the remedy available thereunder; and (2) whether strong equitable considerations favor survival of an action for punitive damages. Matters which are relevant in considering the second of the above factors include whether the defendant's alleged conduct offends against a strong and clearly articulated public policy; whether the underlying conduct constituted intentional misconduct which is also a crime, instead of mere willful and wanton conduct which shades into simple negligence; and whether absent an award of punitive damages, a plaintiff who prevailed on the merits of his or her claim would at most be entitled to only a comparatively small recovery."

*Penberthy v. Price*, 666 N.E.2d 352, 356 (Ill. App. Ct. 1996) (quoting *Grunloh v. Effingham Equity, Inc.*, 528 N.E.2d at 1037-38 (Ill. App. Ct. 1988)).

While there is no explicit provision for punitive damages in the ICFA or other Illinois statutes related to product liability, punitive damages are a common remedy in such actions and form a recognizable component of the state's regulatory scheme. More broadly, the Illinois Supreme Court has noted a strong public interest favoring the protection of human life from defective products placed in the stream of commerce. *E.g.*, *Cassidy v. China Vitamins, LLC*, 120 N.E.3d 959, 968 (Ill. 2018).

Here, seek to dismiss Plaintiffs' claims for punitive damages based on the general principle that such claims do not survive the death of the injured party. In this

case, however, conditions are present which permit an exception from that general rule. First, as observed, punitive damages are an important component of product liability actions, and Illinois law has expressed a strong public interest in discouraging the introduction of dangerously defective products into the marketplace. Second, the injuries described by Plaintiffs, while sufficiently real to allow for standing, are difficult to measure in dollar terms and may ultimately result in a relatively small award. Allowing claims for punitive damages to survive will help to ensure that Plaintiffs do not receive a *de minimis* award should they prevail on the merits of their complaint.

## Conclusion

For the reasons set forth above, the Court denies the Motions to Dismiss (Docs. 85, 89, 91).

**IT IS SO ORDERED.**

DATED:   July 30, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**